IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TABOAS COLON, et al

    Plaintiffs

DIAZ-GONZALEZ, et al                              CIVIL NO. 04-2371 (SEC)

    Defendants

**OPINION AND ORDER**

On September 12, 2009, Plaintiffs filed a "Motion for Summary Judgment in Relation to Damages as to Co-Defendant Angelo Díaz-Gonzalez" (Docket # 130) and a "Statement of Undisputed Material Facts in Support of Motions for Summary Judgment against all Co-Defendants" (Docket # 129). Angelo Díaz-Gonzalez (hereinafter "Díaz") opposed. Dockets ## 142 & 143.

After reviewing the filings and the applicable law, Plaintiffs' Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**

The facts of the instant case were set forth in our previous Opinions and Orders of November 6, 2007 (Docket # 48), January 10, 2008 (Docket # 73), February 5, 2008 (Docket # 80),  January 23, 2009 (Docket # 193) and February 19, 2009 (Docket # 200).

On December 14, 2004, Plaintiffs William R. Taboas-Colón, his wife, and their conjugal partnership (hereinafter Plaintiffs), filed the instant action against Angelo Díaz-Gonzalez, Angel de Jesús  (collectively "Defendants"), their respective wives and conjugal partnerships, and various unnamed defendants. Plaintiffs have brought suit to rescind an investment contract (the viatical settlement)[1], to which they allegedly entered due to Defendants' investment advice. Furthermore,

_____

[1] A viatical settlement is a transaction in which a holder of a life insurance policy (the viator) sells the policy to a third party at a discount, which in turn sells it to various customers who would receive the benefit of a lump sum upon the

Plaintiffs seek to obtain restitution of the monies paid in furtherance of that contract, as well as interest computed therein, damages, attorney's fees and costs.

Per Plaintiffs' allegations, Mutual Benefits Corporation ("MBC"),[2] which is not a party to this action (see Docket # 34), was a viatical settlement provider, who sold said products through sales agents or representatives. According to Plaintiffs' Complaint, Díaz and De Jesús sold the aforementioned investment to Plaintiffs as agents/representatives of MBC. Plaintiffs allege that said sale violated various federal and local securities statutes. They assert eight causes of action, three of which are premised on federal law. The remaining causes of actions are for fraud, breach of contract, breach of fiduciary duty, and negligent misrepresentation.

On January 10, 2008, the Court entered default against Co-Defendant Díaz for his unexcused and repeated failure to comply with the discovery in this case, notwithstanding the Court's orders. Docket # 73. Thereafter, upon Plaintiffs' motion for contempt, and Díaz's motion to set aside the default, the Court, on February 5, 2008, denied both motions and ordered Díaz to appear with new counsel and file an amended Rule 26 Report by February 19, 2008, in order to agree on how to provide the owed discovery, and to file a notice of compliance with the Court's order by said date. See Docket # 80. On February 15, 2008, Díaz appeared with new counsel (Docket # 81) and on February 19, 2008, through his new counsel, filed another Motion to Set Aside the Default (Docket # 85). In its March 28, 2008 Opinion and Order, this Court denied, for the second time, Díaz's motion to set aside the default. Docket # 94. This Court also denied Díaz's motion for reconsideration. Docket # 98.

---

viator's death. See Docket # 1, at p. 4; see also, Black's Law Dictionary 1405 (8th Ed. 2004)("a transaction in which a terminally ill or chronically ill person sells the benefits of a life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's face value.")

[2]   MBC is currently a defendant in an action initiated by the SEC in the Florida District Court for securities laws violations. SEC v. MBC, Civil No. 04-60473 (D. Fla.).  MBC cannot be joined in this action because it has been placed under a TRO and Assets Freeze and is under the direction of a Receiver.

Thereafter, the parties engaged in limited discovery and filed their respective motions for summary judgment. On September 19, 2008, Díaz filed his third motion requesting that default be set aside. Docket # 137. Plaintiffs opposed. Docket # 157. On its January 23, 2009 Opinion and Order, this Court denied Díaz's request to set aside default. Docket # 193.

Finally, this Court partially granted Plaintiffs' request for summary judgment against the De Jesús Co-Defendants. Docket # ____.

**Standard of Review**

*R. FED. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005).   In reaching such a determination, the Court may not weigh the evidence.  Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994).  At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material.  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted).  "A  factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Applicable Law and Analysis**

On September 12, 2008, Plaintiffs filed the instant motion (Docket # 130) and a Statement of Undisputed Material Facts (Docket # 129).

Because the instant motion is for summary judgment, the parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). Plaintiffs complied with this rule and submitted a Statement of Uncontested Material Facts (Docket # 129) (hereinafter "Plaintiffs' SUMF"), numbered, and supported by record citations. After reviewing Plaintiffs' SUMF together with the accompanying

Civil No. 04-2371(SEC)                                                                              **5**

evidentiary documentation, this Court finds that the facts proposed by Plaintiffs are properly supported

by admissible evidence. Díaz filed an opposition and a statement of contested material facts. Docket

# 142, 143. However, Díaz attempted to deny the facts set forth in Plaintiffs' SUMF without providing

record citations to support his denial or qualification. Rule 56(c) provides that party opposing a motion

for summary judgment must:

> submit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

Local Rule 56(c).

When "a party opposing summary judgment fails to act in accordance with the rigors that such

a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving

party's facts as stated." Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7(1st Cir. 2007). As

such, the facts denied without proper documentation are deemed admitted by virtue of Local Rule 56(c).

See Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7(1st Cir. 2007) (holding that "in the

event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule

imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts

as stated."). As a result, Plaintiffs' instant motion for summary judgment is deemed unopposed.

### *Uncontested Facts*

Per Plaintiffs' SUMF, the uncontested facts, in pertinent part[3], are as follows:

Plaintiffs had a broker-client relationship with Defendants prior to buying the viatical settlement

contract, since they previously sold him life and disability insurance. Plaintiffs' SUMF ¶ 56. On October

30, 2002, Plaintiffs signed a Viatical Purchase-Sale contract and Trust Agreement. Plaintiffs' SUMF

¶ 12. MBC's President sent Plaintiffs a letter dated November 8, 2002, welcoming them to MBC's

---

[3] Plaintiffs provided the Statement of Uncontested Material Facts ( Docket # 129) in support of both motions for summary judgment (Dockets # 128 & 130). However, considering that the motion for summary against Díaz is exclusively as to damages, this Court will set forth those uncontested facts which set forth the facts of the case and those that are relevant to the issue of damages.

viatical business program, confirming the receipt of $80,000 and assuring that the purchase of the viatical contract  secured a maximum fixed return for all the funds used for the acquisition of the life insurance. Plaintiffs' SUMF ¶ 17 & 18. On December 2, 2002, Plaintiffs received another letter from MBC's president, confirming that Plaintiffs' investment was for $80,000, with a return investment of 60%, which would amount to $128,000.00. Plaintiffs' SUMF ¶ 19. However, to this date, Plaintiffs have not received any money from their investment. Plaintiffs' SUMF ¶ 57.

Defendants actively solicited Plaintiffs to buy the viatical settlement contract. Plaintiffs' SUMF, ¶ 2. Defendants told Plaintiffs that the investment was safe and described MBC as a serious corporation, a leader in the viatical industry. Plaintiffs' SUMF ¶ 56. They also stated that the $80,000 investment would have a 60% return in 5 years, and Plaintiffs would earn $128,000.00. Id. Plaintiffs paid Defendants, as representatives of MBC, $80,000. Plaintiffs' SUMF ¶ 12. De Jesús earned commissions for the sale of the viatical contract to plaintiffs. Plaintiffs' SUMF ¶ 55. Furthermore, he signed the receipt for the $80,000 received from Plaintiffs for the viatical contract. Id.

Since June 11, 2002, four months before Plaintiffs bought the security sold to them by Defendants, the Commissioner of Financial Institutions of Puerto Rico (hereinafter CFI) had issued Circular Letter CIF CC-02-2, explaining that the Uniform Securities Law of Puerto Rico, Law No. 60, June 18, 1963, 10 P.R. Laws Ann. § 851 *et seq.*, as amended, was applicable to the viatical contracts and, thus, all persons selling the viatical contracts were obligated to comply with the requirements of said law and Regulation 6078, dated January 19, 2000. Plaintiffs' SUMF ¶ 34.

Díaz received Circular Letter CIF-02-2 but did not do anything regarding its contents. Plaintiffs' SUMF ¶ 45. Thus, he knew of the letter's existence before selling the viatical settlement to plaintiffs on October 2002. Plaintiffs' SUMF ¶ 36 & 37. In fact. He called the Office of Commissioner of Financial Institutions and said office faxed Circular Letter CIF CC-02-2 to De Jesús on October 9, 2002. Id.

Furthermore, on June 14, 2002, more than four months before plaintiffs' purchase, El Nuevo Día published a report specifying that the viatical were securities and, as such, must be registered at the CFI's Office. The report also specified that to sell the viaticals a securities broker license was needed. The newspaper report also mentioned that, in the marketing of the viatical contracts in Puerto Rico, emphasis was being given to the fact that the viatical contracts' investment was not affected by changes in the value of stocks or of bonds, and of interest rates, and were being offered as alternatives to certificates of deposits. Plaintiffs' SUMF ¶ 35.

Plaintiffs learned, through another report published on May 22, 2004 in El Nuevo Dia, that MBC's viaticals were not registered at the Puerto Rico Office of Financial Institutions, that a cease and desist order had been issued against MBC in Florida and that MBC had been sued by the Securities Exchange Commission (SEC) in said state. Plaintiffs' SUMF ¶ 20 & 21. Upon learning said information, Plaintiffs requested to meet with Defendants. Plaintiffs' SUMF ¶ 22 During their meeting with Díaz, he assured Plaintiffs that their investment was safe and provided them with a document which stated that as of May 28, 2004, the policy was "currently paid." Id. ¶ 23. Plaintiffs explained that due to the complaint filed by the SEC against MBC, they were willing to return the viatical contract to Defendants in exchange for the initial investment of $80,000. Plaintiffs' SUMF ¶ 24. Díaz informed Plaintiffs that he would "make consultations and would then answer the offer." Id. However, Plaintiffs' attempts to contact Defendants were fruitless, and Defendants failed to respond to Plaintiffs' offer. Plaintiffs' SUMF ¶ 26.

On June 3, 2004, the Office of the Commissioner of Financial Institution of Puerto Rico issued a certification stating that MBC was not registered in Puerto Rico under the Uniform Securities Act of Puerto Rico.  Plaintiffs' SUMF ¶ 38 On even date, said office also issued a certification stating that Defendants were not registered as investor's agents or brokers under the Uniform Securities Act of Puerto Rico. Id. at 39.

## Applicable Law and Analysis

This Court notes that Díaz is in default. See Docket # 74. The First Circuit has held that entry of default prevents a defendant "from disputing the truth of well-pleaded facts in the complaint pertaining to liability." Conetta v. National Hair Care, 236 F.3d 67, 75-76 (1st Cir. 2001). Moreover, the entry of default establishes the defendant's liability. Goldman, Antonetti, Ferraiouli, Axtmayer & Hertell v. Medfit Intl. Inc., 982 F.2d 686, 693 (1st Cir. 1993). Furthermore, a party in default waives all affirmative defenses. Metropolitan Life Insurance Co. v Colon-Rivera, 204 F. Supp. 2d 273, 279 (D.P.R. 2002). However, "the ordinary rule is that a defaulting party is entitled to contest damages and to participate in a hearing on damages, should one be held." Bonilla v. Trebol Motors, 150 f.3d 77, 82 (1st Cir. 1998).

Considering the well-pleaded facts of the complaint and Díaz's entry of default, this Court concludes that Díaz is liable to Plaintiffs under Section 12(a)(2), Section 10(b) and Rule 10b-5 of the Securities Act. However, this does not dispose of Plaintiffs' instant motion.

Plaintiffs' complaint contains seven counts, including claims that arise under Sections 12(a)(2) and 10(b) of the Securities Act, 15 U.S.C. 77l(a)(2) & 15 U.S.C. 77j(b), and Rule 10b-5 of the Securities Exchange Commission, 17 C.F.R. 240.10b-5. In counts three to seven, Plaintiffs make general allegations of fraud, breach of contract, breach of fiduciary duty and intentional or negligent misrepresentation. Based on the seven before mentioned claims, Plaintiffs seek to receive the consideration paid, that is, $80,000, plus interest, attorney's fees, $48,000.00 for the promised return on the investment, and no less than $100,000.00 in punitive damages.

In its February 18, 2009 Opinion & Order (Docket # ___), this Court partially granted Plaintiffs' motion for summary judgment against the De Jesús Co-Defendants. The aforementioned motion and the instant motion are supported by the same SUMF. In its prior opinion, this Court held that Plaintiffs had sufficiently pled their claims under Sections 12(a)(2), Section 10(b), and Rule 10b-5 of the Securities Act and, as such, De Jesús was liable to Plaintiffs under said sections.

As to the amount of damages requested, this Court noted that Section 12(a)(2) provides the remedy of rescission upon tender of the security when the Plaintiff still owns the security. Therefore, Plaintiffs are entitled to the consideration paid, minus any income received, plus interest. Pursuant to the statement of uncontested facts, Plaintiffs paid $80,000 and have not received any income from their investment. Plaintiffs' SUMF ¶¶ 12, 17-19, 56-57. As such, this Court concluded that Plaintiffs are entitled to $80,000, plus interest thereon. Since Defendants in this case are jointly and severally liable to Plaintiffs for said amount, Plaintiffs' request for summary judgment against Díaz as to damages under Section 12(a)(b) is **GRANTED**.

However, in its previous Opinion & Order, this Court also held that under Section 10(b) and Rule 10b-5 there is no clear rule as to the computation of damages. As stated by this Court:

> [t]he Supreme Court has held that "[t]he issue whether and under what circumstances rescission or a rescissory measure of damages is available under § 10(b) is an unsettled one." Randall, 478 U.S. at 540. Some courts have applied an "out-of-pocket" measure of damages in Section 10(b) cases which consists of the difference between the fair value of all that the plaintiff received and the fair value of what he would have received had there been no fraudulent conduct. Others have allowed the plaintiff, in some circumstances, to choose between "undoing the bargain (when events since the transaction have not made rescission impossible) or holding the defendant to the bargain by requiring him to pay [out-of-pocket] damages." Randall, 478 U.S. at 541 (citations omitted) ... Discretion as to the judgment or the need for a hearing on damages is vested with the district court. Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 64 (1st Cir.) (citing Pope v. United States, 323 U.S. 1, 12 (1944). In the instant case, this Court will exercise its discretion and will grant a hearing to determine the amount of damages to be imposed upon De Jesús under the fraud claims.

The same ruling applies to Co-Defendant Díaz. Therefore, this Court cannot grant Plaintiffs' request for summary judgment as to damages under Section 10(b) and Rule 10b-5.

### *Punitive Damages*

Plaintiffs also seek the imposition of punitive damages. However, "punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." Rivera-Oquendo v. Soto-Santiago, 552 F. Supp. 2d 229, 232 (D.P.R. 2008) (citing City of

Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67 (1981)). In the instant case, Díaz's actions, despite being reckless, were not sufficiently so as to warrant the awarding of punitive damages. Moreover, punitive damages are generally not awarded in private actions under Section 12, Section 10(b) claims nor under Puerto Rico law. See De Haas v. Empire Petroleum Co., 435 F.2d 1223, 1232 (10th Cir. 1970); Goldberg v. Meridor, 81 F.R.D. 105 , 110 (S.D.N.Y. 1979); Globus v. Law Research Service, Inc., 418 F.2d 1276, 1283 (2nd Cir. 1969); Green v. Wolf Corp., 406 F.2d 291, 303 (2nd Cir. 1968); Burkhart v. Allson Realty Trust, 363 F. Supp. 1286, 1290 (N.D.Ill. 1973); Marina Indus., Inc. v. Brown Boveri Corp., 114 D.P.R. 64 (1983). As such, Plaintiffs' request for the imposition of punitive damages is **DENIED**.

### *Attorney's Fees and Costs*

The Supreme Court has held that "parties are ordinarily required to bear their own attorney's fees -- the prevailing party is not entitled to collect from the loser." See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001) (citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975)). Said reasoning, commonly referred to as the "American Rule," reflects "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." Id. (citing Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994)). However, the Court has also noted that despite the above mentioned "rule", Congress has authorized the award of attorney's fees to the prevailing party in numerous statutes,[4] when a party disobeys court orders, and as a "sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (citing Alyeska, 421 U.S. at 258-259).

This Court notes that under Section 10(b) claims, "a district court's power to award attorney's fees is sharply circumscribed." Ernst & Ernst, 425 U.S. at  211 n. 30.  Moreover, some circuit courts

---

[4] Such as the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e-5(k), the Voting Rights Act Amendments of 1975, 89 Stat. 402, 42 U.S.C. § 1973l(e), and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988.

have expressly held that attorney's fees are not allowed in Section 10(b) suits. See Cotton v. Slone, 4

F.3d 176, 181 (2nd Cir.1993);  Van Alen v. Dominick & Dominick, Inc., 560 F.2d 547, 555-554 (2nd Cir.

1977); Straub v. Vaisman & Co., 540 F.2d 591, 599 (3rd Cir. 1976).

Notwithstanding, Section 11(e) of the Securities Act of 1933 provides, in pertinent part, that:

> [i]n any suit under this or *any section of this sub-chapter* [sub-chapter 1]the court may,
> *in its discretion, require the undertaking for the payment of costs of such suit, including
> reasonable attorney's fees*, and if judgment shall be rendered against a party litigant,
> upon motion of the other party litigant, such costs may be assessed in favor of such party
> litigant (whether or not such undertaking has been required) if the court believes the suit
> or defense to have been without merit, in an amount sufficient to reimburse him for the
> reasonable expenses incurred by him, in connection with such suit, such costs to be
> taxed in the manner usually provided for taxing costs in the court in which the suit was
> heard.  15 U.S.C. § 77k(e). (emphasis added).

Considering that Section 12(a)(2) is a section of sub-chapter 1 of the Securities Act of 1933, Section

11(e) applies in the instant case.  See Ernst & Ernst, 425 U.S. at 209.

As previously stated, shortly after purchasing the security from Defendants, and as soon as they

learned about MBC's legal problems, Plaintiffs requested to meet with Defendants. When said meeting

took place, Plaintiffs tendered the security to Defendants and requested the return of their initial

investment. At that time, Defendants did not respond to Plaintiffs' offer to tender the security, and

despite Plaintiffs' attempts to contact Defendants, they never responded to Plaintiffs' offer. Therefore,

Defendants could have avoided the long and costly legal proceedings that have dragged on for the past

four years.

Taking the foregoing into consideration as well as Díaz's default, and exercising the discretion

therein granted, this Court concludes that the defenses set forth by Defendants were without merit,

therefore, Plaintiffs' request for attorney's fees and costs is **GRANTED**.

### *Breach of Contract Claim*

Finally, this Court will address Plaintiffs' breach of contract claim under state law. Article 1209

of Puerto Rico Civil Code provides that "[c]ontracts shall only be valid between the parties who execute

them and their heirs...". 31 P.R. Laws Ann. 3373; see also Dennis v. City Fed. Savs & Loan Assoc., 121

**Civil No. 04-2371(SEC)**                                                                                            **12**

P.R. Dec.197 (1988). Upon reviewing the record, the Court notes that only MBC, represented by its President, and Plaintiffs are parties to the Viatical Purchase-Sale Contract. Plaintiffs' SUMF ¶ 12. Although Díaz actively solicited Plaintiffs to buy the viatical, he is not a party to said contract. Docket # 129, Exhs. 6 & 7. As such, despite Díaz's entry of default, this Court cannot grant judgment as a matter of law as to Plaintiffs' breach of contract claim. Therefore, Plaintiffs' breach of contract claim is **DISMISSED with prejudice**.

**Conclusion**

Based on the foregoing, this Court finds as follows:

1.      Plaintiffs' Section 12(a)(2), Section 10(b) and Rule 10b-5 claims are **GRANTED**;

2.      Under the Section 12(a)(2) claim, Plaintiffs are entitled to $80,000, plus interest, reasonable attorney's fees and costs;

3.      Plaintiffs' breach of contract claim is **DISMISSED with prejudice**;

4.      Plaintiffs' request for the imposition of punitive damages is **DENIED**;

5.      Plaintiffs' request for summary judgment on the amount of damages under Section 10(b) and Rule 10-b is **HELD in abeyance**, and will be ruled upon after a hearing on damages.

Therefore, Plaintiffs' "Motion for Summary Judgment in Relation to Damages as to Co-Defendant Díaz" is **GRANTED in part and DENIED in part**.

As a result, the Court will proceed as follows:

1.      Judgment will be entered under Section 12 (a)(2) for the amount of $80,000, plus interest, reasonable attorney's fees and costs;

2.      Judgment as to the amount on damages under Section 10(b) will be held in abeyance until a hearing is to determine the amount of damages is held;

3.      Plaintiffs shall inform this Court by **February 27, 2009** whether they want this Court to proceed on a hearing on damages under their Section 10(b) claim, or in light of the

**Civil No. 04-2371(SEC)**                                                                    **13**

Judgment to be entered under Section 12(a)(2) for the amount of $80,000, plus interest, reasonable attorney's fees and costs, Plaintiffs choose to waive their right to a hearing on damages. If Plaintiffs choose the latter, this Court will in due course enter Judgment dismissing their Section 10(b) claim without prejudice.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 19th day of February, 2009.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. District Judge