IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Taboas Colón, et al

    Plaintiffs

Díaz-González, et al

    Defendants

**CIVIL NO. 04-2371 (SEC)**

**OPINION AND ORDER**

On February 24, 2009, Angelo Díaz-González ("Díaz") filed a Motion to Alter Judgment. Docket # 205. Co-defendant Angel De-Jesús, his wife, and their conjugal partnership ("De-Jesús") filed a motion joining the arguments set forth in Díaz's request for reconsideration. Docket # 206. Plaintiffs William R. Taboas-Colón ("Taboas"), his wife, and their conjugal partnership (collectively "Plaintiffs"), opposed. Docket # 217. Díaz replied, and Plaintiffs filed a sur-reply. Dockets ## 219 & 227. After reviewing the filings, and the applicable law, Defendants' motion for reconsideration is **DENIED**.

**Factual and Procedural Background**

The facts of the instant case are set forth in our previous Opinions and Orders of November 6, 2007 (Docket # 48), January 10, 2008 (Docket # 73), February 5, 2008 (Docket # 80), January 23, 2009 (Docket # 193), and February 19, 2009 (Dockets ## 200 & 201). On December 14, 2004, Plaintiffs filed the instant action against Díaz, DeJesús (collectively "Defendants"), their respective wives and conjugal partnerships, and various unnamed co-defendants, under Sections 12(a)(2) of the Securities Act of 1933 ("Section 12"), 15 U.S.C. 77l(a)(2), Section10(b) of the Securities Act of 1934 (Section 10(b)"), 15 U.S.C. 77j(b), and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. 240.10b-5. Plaintiffs seek

**CIVIL NO. 04-2371 (SEC)**                                                                 Page 2

to rescind an investment contract (the "viatical settlement" or "the security")[1], to which they allegedly entered, moved by the Defendants' investment advice. They also seek restitution of the monies paid in furtherance of said contract, as well as interest computed therein, damages, attorney's fees and costs.

Per Plaintiffs' allegations, Mutual Benefits Corporation ("MBC"),[2] which is not a party to this action (see Docket # 34), was a viatical settlement provider, who used to emgage in the sale of said products through sales agents or representatives. According to the complaint, Díaz and De Jesús sold the aforementioned investment to Plaintiffs as agents/representatives of MBC. Plaintiffs allege that the sale violated various federal and local securities laws.

On January 10, 2008, this Court entered default against Díaz for his unexcused and repeated failure to comply with discovery, notwithstanding this Court's orders. Docket # 73. Thereafter, upon Plaintiffs' motion for contempt, and Díaz's motion to set aside the default, this Court, on February 5, 2008, denied both motions and ordered Díaz to appear with new counsel and file an amended Rule 26 Report by February 19, 2008, in order to agree on how to provide the owed discovery, and to file a notice of compliance with this Court's order by said date. See Docket # 80. On February 15, 2008, Díaz appeared with new counsel (Docket # 81) and on February 19, 2008, through his new counsel, filed another Motion to Set Aside the Default (Docket # 85). In its March 28, 2008 Opinion and Order, this Court denied, for the second time,

---

[1] A viatical settlement is considered a security under the law, and consists of a transaction in which a holder of a life insurance policy (the viator) sells the policy to a third party at a discount, which in turn sells it to various customers who would receive the benefit of a lump sum upon the viator's death. See Docket # 1, at p. 4; see also, Black's Law Dictionary 1405 (8th Ed. 2004)("a transaction in which a terminally ill or chronically ill person sells the benefits of a life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's face value.")

[2] MBC is currently a defendant in an action initiated by the SEC in the Florida District Court for securities laws violations. SEC v. MBC, Civil No. 04-60473 (D. Fla.). MBC cannot be joined in this action because it has been placed under a TRO and Assets Freeze and is under the direction of a Receiver.

**CIVIL NO. 04-2371 (SEC)**                                                                 Page 3

Díaz's motion to set aside the default. Docket # 94. This Court also denied Díaz's motion for reconsideration. Docket # 98.

Thereafter, the parties engaged in limited discovery and filed their respective motions for summary judgment. On September 19, 2008, Díaz filed his third motion requesting that default be set aside, and Plaintiffs opposed. Dockets ## 137 & 157. In the January 23, 2009 Opinion and Order, this Court once again denied Díaz's request to set aside default. Docket # 193. His request for reconsideration was also denied. Docket # 199. Finally, on February 19, 2009, this Court partially granted Plaintiffs' motions for summary judgment against De Jesús and Díaz, and denied Díaz's request for summary judgment. Dockets ## 200 and 201. As a result, Plaintiffs were awarded $80,000, plus interest, reasonable attorney's fees and costs under Section 12(a)(2), their breach of contract claims were dismissed, punitive damages were denied, and Plaintiffs' request for summary judgment on the amount of damages under Section 10(b) and Rule 10-b was held in abeyance pending a hearing on damages.

On February 24, 2009, Díaz filed a motion for reconsideration, and De-Jesús joined the arguments set forth therein. Dockets ## 205 & 206. Plaintiffs filed an opposition, Defendants replied, and Plaintiffs filed a sur-reply. Dockets ## 217, 219 & 227.

**Standard of Review**

FED. R. CIV. P. 59(e) allows a party, within ten (10) days of the entry of judgment, to file a motion seeking to alter or amend said judgment. The rule itself does not specify on what grounds the relief sought may be granted, and courts have ample discretion in deciding whether to grant or deny such a motion. Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004) (citations omitted). In exercising that discretion, courts must balance the need for giving finality to judgments with the need to render a just decision. Id. (citing Edward H. Bolin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993)). Despite the lack of specific guidance by

**CIVIL NO. 04-2371 (SEC)** Page 4

the rule on that point, the First Circuit has stated that a Rule 59(e) motion "must either clearly establish a manifest error of law or must present newly discovered evidence." F.D.I.C. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992) (citing Fed. Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)). Rule 59(e) may not, however, be used to raise arguments that could and should have been presented before judgment was entered, nor to advance new legal theories. Bogosonian v. Woloohojian Realty Corp., 323 F.3d 55, 72 (1st Cir. 2003).

**Applicable Law and Analysis**

In their motion for reconsideration, Defendants argue that newly discovered evidence shows that Plaintiffs concealed evidence, made misrepresentations, and committed fraud against this Court. Docket # 205. In support thereof, Defendants argue that the allegations set forth in the complaint are not well-pleaded facts. Specifically, they allege that Plaintiffs no longer own the security, despite alleging ownership of the same in the complaint. Defendants aver that they recently obtained evidence showing that Plaintiffs concealed the fact that they are no longer owners of the security in question. They contend that because Plaintiffs no longer own the security in question, this Court's Judgment of rescission under Section 12 is not enforceable. Defendants point out that Plaintiffs' only remedy is damages, however, since they requested rescission in the complaint, they are impeded from changing the remedies sought in the instant case.

Furthermore, according to Defendants, Plaintiffs did not satisfy the loss causation requirement under Sections 12 and 10(b). They contend that Plaintiffs' loss is a direct consequence of their failure to pay the administrative fees required by MBC's Receiver, forfeiting their interest in the investment. Finally, Defendants posit that they are not jointly and severally liable. In light of Plaintiffs' alleged fraudulent conduct and failure to state their claims, Defendants move this Court to set aside its award for attorney's fees, and dismiss the

instant case, or in the alternative, allow them to file a supplemental motion for summary judgment.

Plaintiffs oppose, arguing that Díaz's search for the proffered "newly discovered evidence" began after the conclusion of discovery, and the subpoenas sent to MBC's Receiver were never notified to Plaintiffs. Moreover, Plaintiffs allege that Defendants knew that they were not owners of the security prior to serving said subpoenas, and the filing of the motions for summary judgement. Specifically, as of February, 2008, Díaz had obtained documentation showing that failure to pay the administrative fees would entail forfeiture of the investment, and as of July, 2008, during Taboas' deposition, he learned that Taboas had not made any payments to the Receiver. Thus, Plaintiffs deny concealing relevant evidence, or committing fraud against the opposing party or this Court. Plaintiffs further contend that insofar as loss causation under Section 12(2) is an affirmative defense, and Díaz is in default, his request on this front should be denied. Lastly, according to Plaintiffs, this Court correctly held that Defendants are jointly liable for damages pursuant to In re Del-Val Fin. Corp. Sec. Litig., 868 F. Supp. 547, 558 (S.D.NY. 1994), and Musick, Peeler & Garrett v. Employers Ins., 508 U.S. 286, 292 (1993).

This Court will discuss each argument separately.

*"Newly discovered Evidence" and Damages*

As previously stated, Defendants contend that since Plaintiffs do not own the security anymore, their only available remedy is for damages, and not rescission. They further allege that Plaintiffs' allegations in the complaint are not well pleaded facts, and that they improperly requested rescission. Based on the foregoing, Defendants contend that Plaintiffs have misrepresented the facts to this Court, and as a result, they move for the dismissal of Plaintiffs' claims. However, this Court notes that at the date of the filing of the complaint, Taboas owned the security in question, had tendered the same to Defendants, and sought rescission

**CIVIL NO. 04-2371 (SEC)**                                                                                              Page 6

accordingly. Thus the facts, and the remedies sought in the complaint, were appropriate at the time. In short, Plaintiffs have not misrepresented facts to this Court. Notwithstanding, in light of the events that have occurred since the filing of the complaint in 2004, Plaintiffs no longer own the security in question. The remedy of rescission is not viable at this time but this does not entail the dismissal of Plaintiffs' claims, insofar as Defendants' liability has been duly established, and Plaintiffs are still entitled to damages.

In discussing Section 12, the Supreme Court held that the remedy of rescission seeks to restore Plaintiff to his position before the purchase of the security while serving as a measure of deterrence. Randall v. Loftsgaarden, 478 U.S. 647, 659 (1986). However, when the plaintiff no longer owns the security, he is only entitled to damages, albeit the Court noted that "damages are to be measured so as to result in the substantial equivalent of rescission." Id. at 655-656. In Randall, the Supreme Court also held that a defendant is responsible for any decline in the value of the security after plaintiff tenders the same, whether or not that decline was actually caused by the fraud. Randall, 478 U.S. at 659.

This Court first addresses Defendants' allegation that the 1995 Private Litigation Securities Act ("PLSA") repealed Randall's finding that a defendant is responsible for a decline in value of the security. Upon reviewing the record, this Court notes that Defendants fail to provide any citation in support of said assertion. Furthermore, it lacks support in securities case law, since Randall is a leading case in this arena. Moreover, Randall's holding is not inconsistent with the amendments to Section 12(a)(2) under the PLSA. Contrary to Defendants' assertions, sub-section (b) does not impose a loss causation requirement for claims under

**CIVIL NO. 04-2371 (SEC)**                                                                 Page 7

Section 12, instead it creates an affirmative defense.[3] Thus, Randall has not been superseded by said statute.

Defendants' also erroneously argue that this case is not about a security's decline in value, therefore, Randall does not apply. Defendants completely miss the point of Randall's holding. The Supreme Court sought to protect victims of prospective fraud, by allowing them to demand rescission upon tender of the security, and if defendants refused, they would be liable for plaintiff's loss. According to the uncontested facts of this case, Plaintiffs were told that a viatical settlement was not a security, despite the fact that Defendants had received documentation stating otherwise. They also assured Plaintiffs, through oral presentations and prospectus, that they would receive fixed returns of 12-72% on their investment, and that it was low risk, despite the public information regarding the fraudulent sale of viaticals in Puerto Rico and the United States. Moreover, Defendants never told Plaintiffs when they originally made their investment that, in addition to the original investment of $80,000, they might have to pay additional sums for premiums in order to receive the promised benefits. Given these misrepresentations, Plaintiffs had no obligation to pay any additional amount of money, especially when paying said amount would not ensure a return on his investment. Most importantly, prior to filing this suit, Plaintiffs tendered the security to Defendants first in May 2004, and then again in December 2004, and Defendants refused to accept the same. As a result, Defendants cannot argue that Plaintiffs' actions after the tendering of the security is the proximate cause of Plaintiffs' losses. Pursuant to Randall, any decline in value is attributable to Defendants. In a procedural side, Díaz's argument for dismissal on these grounds were already denied by this Court. See Docket # 202.

---

[3] This issue will be addressed in the next section.

In sum, the remedies provided to the buyer under Section 12(a)(2) are limited to recovering the consideration paid for the security with interest, less any amount of income received, upon tender of the security, or for damages if the buyer no longer owns the security. See Pinter, 486 U.S. at 661. Randall held that "even in the latter situation ... a rescissory measure of damages will be employed; the plaintiff is entitled to a return of the consideration paid, reduced by the amount realized when he sold the security and by any 'income received' on the security." Randall, 478 U.S. at 656. As rescission is not at present possible, this Court's Judgment is amended to award Plaintiffs damages in the amount of the consideration paid, that is, $80,000, plus interest.

*Loss Causation*

As previously discussed, Defendants also aver that Plaintiff failed to show loss causation under Section 12(a)(2) and Rule 10(b). This Court notes that albeit Plaintiff must show loss causation in order to state a claim under Section 10(b), that is not the case under Section 12. Tambone, 550 F.3d at 130; see Stoneridge, 128 S. Ct. at 768; *Cf.* In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003) (finding that loss causation does not have to be pled in a Section 11 claim, as it must be in a Section 10b claim, since the absence of loss causation is an affirmative defense to a Section 11 claim); Bastian v. Petren Resources Corp., 892 F.2d 680, 685 (7th Cir. 1990) (in actions under section 11 of the 1933 Act, 15 U.S.C. § 77k, absence of loss causation is an explicit defense); In re Adams Golf, Inc. Secs. Litig., 381 F.3d 267 (3d Cir. 2004) (loss causation may be used as an affirmative defense against Section 11 claims). After reviewing the clear language of Section 12 (b), this Court notes that loss causation under said section is an affirmative defense, not a pleading requirement. See Arkansas Public Employee Retirement System et al. v. GT Solar International, Inc., No. 08-312, slip. op. at 17 (D.N.H. Oct 7, 2009); see also Lalor v. Omtool, No. 99-469, slip

op at 8-9 (D.N.H. Dec. 14, 2000) (finding that "as to claims under § 11 and 12 of the Securities Act, 'loss causation' is not an essential element of a viable cause of action. It is, however, an affirmative defense that may be raised by a defendant.") Díaz is in default, therefore he cannot assert affirmative defenses. Notwithstanding, since Plaintiffs tendered the security, and Defendants refused to accept the same, they cannot argue that Plaintiffs are responsible for their loss on this front, pursuant to Randall.

Defendants repeatedly fail to recognize that Plaintiffs tendered the security, and Defendants refused to accept the tender of the security, which is precisely what led to this suit. Defendants cannot reasonably persuade this Court to conclude that Plaintiff must be held responsible for the loss of the security, when he tendered the same to Defendants twice in 2004, and has not profited from the investment. Even if Plaintiffs had made the payments to the receiver, which they were never warned about prior to buying the viatical, they would not have been guaranteed a return on their investment. Moreover, if Defendants were willing to assume the costs, and the risk of the investment, they should have accepted it when tendered in 2004, and avoided this protracted litigation.

As to Section 10(b) claims, in Dura Pharm, Inc. v. Broudo, 544 U.S. 336, 341-342 (2005), the Supreme Court held that the element of loss causation under said section requires a proximate cause inquiry. See In re Credit Suisse-AOL Sec. Litig., Fed. Sec. L. Rep. (CCH) P94,135, 2006 U.S. Dist. LEXIS 86363, Civil No. 02-12146, *29-30 (D. Mass. 2006). Namely, to satisfy the final "loss" element, a plaintiff must show both economic loss and loss causation, *i.e.* a causal connection between the material misrepresentation or omission and the loss. Alvarado v. Morgan Stanley Dean Witter, Inc., 448 F. Supp. 2d 333, 336 (D.P.R. 2006). Despite Plaintiffs' burden of proof, the loss causation pleading requirements should be interpreted so as not to impose a significant burden on plaintiffs. In re Credit Suisse, Civil No. 02-12146 at

* 29-30. Pursuant to the complaint, and the uncontested facts set forth in the prior Opinion and Order, Plaintiffs demonstrated that they suffered a loss as a result of Defendants' fraudulent actions, and are entitled to damages under said section. Specifically, Plaintiffs showed that they paid $80,000 induced by false and misleading information provided by Defendants, and that did not receive any income from their investment. But for Defendants' equivocations, Plaintiffs would not have invested in the viatical settlement.

Lastly, this Court finds that Defendants allegations regarding "newly discovered evidence" fail. Specifically, in their "Motion Requesting Dismissal for Obstruction of Justice and Concealment of Evidence and Potential Perjury Committed by the Plaintiff," filed on November 24, 2008, Defendants did not include the document which they now allege shows that Plaintiffs "knew" that they no longer owned the security. The letter sent by MBC's receiver to Díaz's counsel is dated November 13, 2009, that is, prior to the filing of said motion, and more than three months prior to the Opinion and Order Defendants seek to set aside. Thus Defendants could have informed this Court about said document much sooner, and cannot now assert that it constitutes new evidence for purposes of this motion. Furthermore, said motion was denied, therefore, the arguments therein set forth have already been addressed by this Court, and as such, do not constitute newly discovered evidence. After reviewing the record, this Court finds that Defendants knew that Plaintiffs had not paid the receiver fees, and that failure to do so would entail forfeiture of their interest.

**Joint and Several Liability**

Defendants in this case are not merely aiders or abettors. In the case at bar, Defendants are being held liable for their own actions, not for the actions of a third party. As such, contrary to Defendants' assertions, the instant case is about primary liability, not secondary liability.

**CIVIL NO. 04-2371 (SEC)**                                                                                  Page 11

Many courts have held that "[j]oint and several liability applies when there has been a judgment against multiple defendants." In re Del-Val Fin Corp. Sec. Litig., 868 F. Supp 547, 557 (S.D.N.Y 1994)(citing McDermott, Inc. v. AmClyde, 511 U.S. 202, (1994); Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256 (1979)). In Musick, 508 U.S. at 292, the Supreme Court held that "parties against whom contribution is sought are, by definition, persons or entities alleged to have violated existing securities laws and who share joint liability for that wrong under a remedial scheme established by the federal courts." The basic rule in securities actions is that defendants against whom judgment is entered are jointly and severally liable to plaintiffs. In re Del-Val Fin Corp. Sec. Litig., 868 F. Supp 547, 558 (S.D.N.Y. 1994)(citing Musick, Peeler & Garrett v. Employers Insurance of Wausau, 508 U.S. 286, 291 (1993)). Part of its principle is that, "[w]hen limitations on the plaintiff's recovery arise from outside forces, joint and several liability makes the other defendants, rather than an innocent plaintiff, responsible for the shortfall." McDermott, 511 U.S. at 221.

Moreover, in 15 U.S.C. §78u-4(f), Congress clearly established the guidelines for applying joint and several, or proportional liability to multiple Defendants found to have violated securities laws. Section 78u-4(f)(1) states that it is not meant to "create, affect, or in any manner modify the standard for liability" already set in a particular securities law. Section 78u-4(f) is merely meant to delineate how liability is to be shared amongst multiple covered persons found to be liable for violating securities laws. Section 78u-4(f)(2)(A) then goes on to state that if the trier of fact finds against a covered person, then that person is jointly and severally liable... but "only if the trier of fact specifically determines that [they] knowingly committed a violation." In the absence of this specific intent, § 78u-4(f)(2)(B), which instead calls for proportional liability, would apply.

**CIVIL NO. 04-2371 (SEC)**                                                                                             Page 12

In the case at bar, this Court has already held that the requisite scienter was present for Sections 12(a)(2), 10(b), and Rule 10b-5 violations. Therefore, the additional hurdle for § 78u-4(f)(2)(A)'s applicability has already been met. As such, the only question that remains is whether or not § 78u-4(f)'s guidelines for shared liability "create, affect, or in any manner modify the standard[s] of liability" that might already be delineated in § 12(2)(a) or § 10(b), Rule 10b-5. If yes, then the governing standard will be the one found in the actual statute. If no, then the standard set in § 78u-4(f)(2)(A) for joint and several liability will govern.

Albeit Section (a)(2) states that a Defendant shall be liable (1) to the person who purchased the security from him, (2) for the consideration paid, (3) plus interest, (4) less the amount of income received, (5) upon tender of the security, or (6) for damages if the person no longer owns the security, there is no reference to how liability is to be shared amongst multiple defendants. As such, applying § 78u-4(f)'s guidelines for dividing liability amongst multiple Defendants does not "create, affect, or in any manner modify the [existing § 12(a)(2)] standard of liability." Accordingly, applying § 78u-4(f)(2)(A)'s standard of joint and several liability is proper for Section 12(a)(2) violations. Since Section 10(b), and Rule 10b-5 do not establish a standard of liability, Section 78u-4(f)(2)(A)'s standard of joint and several liability is also proper as to these claims.

**Conclusion**

Based on the foregoing, Defendants' motion for reconsideration is **DENIED**. However, this Court's previous Opinion and Order, and Judgment, are amended as follows: Plaintiffs are entitled to **damages** in the amount of $80,000, plus interest, reasonable attorney's fees and costs, under their Section 12(a)(2) claim. The amount of damages under Section 10(b) will be determined at a hearing to be held on **November 10, 2009 at 10:00 am.**

**IT IS SO ORDERED**.

**CIVIL NO. 04-2371 (SEC)** **Page 13**

San Juan, Puerto Rico, this 26th day of October, 2009.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. District Judge